Ms. Pino. Good morning, Your Honors. May it please the Court, Lissette Pino on behalf of Mr. Carcamo. I would like to reserve two minutes for rebuttal. Just keep an eye on the clock. Yes, sir. Under the due process clause, a district court cannot base a defendant's sentence, even in part, on the defendant's national origin. But here, the record is clear that Mr. Carcamo's sentence was partly based on the fact that he is from Honduras. The district court expressly said it wanted to deter the dealers coming from Honduras and dealing fentanyl in San Francisco. That error requires reversal, even under the plain-error standard of review. This Court's opinion in Barrero-Esasa is clear about what district courts can and cannot do with respect to a defendant's national origin in this context. A sentencing judge cannot try to deter criminal conduct by people of the same national origin and give a defendant a harsher sentence to achieve that goal. What a district court can do is look at defendants who are trafficking in drugs from a source country and penalize those defendants more harshly if there is support in the record to make such a finding. And that's Barrero-Esasa footnote 3. This is permissible because it's penalizing the defendant based on his conduct, not on his national origin. And the court in Barrero gave the example of two defendants, one American and one Colombian, both of whom are dealing in Colombian drugs, who received the same sentence for engaging in that reprehensible conduct. That's not based on national origin. But that isn't what happened here. The district court cited two reasons for imposing the sentence that it did, which was 12 months higher than the sentence recommended by U.S. probation. One was the quantity of fentanyl involved in the case, and the second was deterrence. And in terms of deterrence, the Court specifically said it was not concerned that Mr. Carcamo was going to commit this crime again. So specific deterrence as to him is out. Specific deterrence as to his half-brother, who was also involved, is out. After counsel objected that it would be unfair to penalize Mr. Carcamo for his half-brother, who was arguably more culpable and had fled, the district court disclaimed deterring the half-brother. And so it really was focused on Honduran drug dealers, in the plural. Would you agree that the comments by the district court here are pretty far removed from those in Barrero-Osasa? There are certainly fewer comments, Your Honor. And there were some comments in Barrero-Osasa that suggested animus, which is not present here. There were pretty extensive comments suggestive of animus there.  But I think the key similarity is that both Barrero and this case involve an expressed desire to deter other people of the defendant's national origin. So in Barrero, the court was trying to send a message, using the defendant to send a message to Colombian drug dealers. And the same was true here. The court wanted the dealers coming from Honduras and dealing fentanyl to know, based on Mr. Carcamo's sentence, that they shouldn't do that. Well, so the PSR describes the — I mean, I gather there was a conspiracy involving some other people who had, in fact, brought drugs from Honduras. Or the other participants in the conspiracy who were bringing the drugs were also from Honduras. Is that correct? No, Your Honor. That's wrong on two counts. So to start, the district court did not make a conspiracy finding. Well, I know that. But the PSR refers to some of his co-conspirators, and they were from Honduras, weren't they? The PSR mentions other participants in the offense. It expressly does not make a conspiracy finding. So the PSR only attributes to Mr. Carcamo the drugs that he took responsibility for, not all the drugs that were found, not the drugs that were found in the Half Brothers' room, not certain drugs in the rest of the house. And so that shows that, even implicitly, there was no conspiracy finding here. And the district court adopted the PSR without change.  Okay. So I take the point there, but even if it's not a conspiracy, there were other people involved with the defendant who had brought drugs, and they were from Honduras, were they not? The people were from Honduras. There's no evidence in the record that the drugs were from Honduras. There's no evidence in the record that Mr. Carcamo or anybody else came here from Honduras as part of a scheme to deal drugs in the Bay Area. There's no evidence. There's no, you know, texts with a Honduran cartel suggesting some outside involvement. And the district court recognized this. So at the hearing, defense counsel tried to suggest that Mr. Carcamo might have been pressured by others into dealing drugs. And the district court correctly said, I don't have evidence. It was at the direction of anyone other than Mr. Carcamo. And that's at ER 19. So I think it's pretty clear that the district court not only was not finding a conspiracy, but also was not willing to go beyond what Mr. Carcamo himself had admitted that he did. And all he admitted he did was sell drugs and transport them from Oakland to the Bay Area. So there's no nexus to Honduras on these facts. And I think that's pretty important, and it's actually distinguishable from what, you know, this court noted there could have been a basis in the record to find that the drugs were imported from Colombia. But even then, this court declined to find that that made the district court's comments permissible because the district court didn't expressly make such a  That's why footnote three is so key. This court said, in this area of constitutional sensitivity, explicit factual findings on the record are required by the district court. That didn't happen here. That's plain error. Well, explicit factual findings are required if the judge is going to impose a sentence, you know, based on the drugs having come from that country. I guess where I'm having a little bit of difficulty is, I mean, this is a single reference to a country. You know, from context, we can infer that, like, that's the country that he's from, but that's not actually what the judge says, which I think is different from the way the judge talked about it in Barrera-Sasa. And so how is it plain on this record that Carcamo's status as a person from Honduras was part of the reason for the sentence? So Barrera-Sasa is clear that the focus should be not on any kind of magic words, but on the actual basis for imposing the sentence. So here, even though there was only one reference, it was clear that the district court was aware Mr. Carcamo was from Honduras. And I'll give the court some examples. The district court specifically referenced multiple times the fact that Mr. Carcamo was going to be deported. Where was he going to be deported to? Honduras. The district court repeatedly referenced that his half-brother had fled. Where did he flee to?  The district court talked about Mr. Carcamo's mother, who he was supporting. Where was his mother? Honduras. Page 1 of the PSR, which the district court specifically said that it read, lists Mr. Carcamo's place of birth as Honduras. So the district court is looking at Mr. Carcamo, and it's perfectly aware that Mr. Carcamo is from Honduras. Now, the question is, can the court, based on this one comment, conclude that the district court had a thought process along the lines of, well, this defendant is Honduran. I want to deter other Honduran drug dealers like him. Therefore, I'm going to give him a higher sentence. And I think the answer to that is yes. Because why would the court be concerned about deterring Honduran drug dealers if not for the fact that Mr. Carcamo himself was Honduran? If Mr. Carcamo had been as American as apple pie, and no one brought up Honduras at the sentencing hearing, and out of nowhere the court said, you know, I'm very concerned about deterring Honduran drug dealers. I'll give you a harsher sentence to bring about that goal. I think it would be pretty odd and bizarre to make that kind of comment. So here it is clear on the record that the district court's statement was based on Mr. Carcamo's national origin, at least in part. And that's enough under Brera-Rosasa. I see I'm eating into my rebuttal time.   Mr. Yeager. Mr. Yeager. May it please the Court. My name is Kevin Yeager, and I represent the United States. The judgment below should be affirmed because the district court did not rely on any impermissible factors in sentencing the defendant. On the contrary, the record shows that the sentence was primarily driven by, first, the staggering amount of drugs that Mr. Carcamo admitted to possessing when he was drug dealers, both factors appropriate under 3553A. Unlike cases where the sentencing court's comments were tinged with animus regarding characteristics unconnected to the offense, here the district court made a single, solitary reference over two sentencing hearings lasting a total of 50 minutes to drug dealers coming from Honduras. Why don't we just go through that statement that the district court made? Okay. At the sentencing hearing where she says after defense counsel was talking about it being inappropriate to take into consideration his half-brother, and then the district court says, but isn't deterrence, isn't one of the things I have to think about, is that it needs to stop referring to the drug fentanyl and whatnot. And then defense counsel says, yes, and then the key language that we've all been talking about, the district court says that the dealers coming from Honduras and dealing fentanyl in this community and harming not just the people who take the drugs but the kids who have to walk to school in the Tenderloin, that the businesses that are closing because people don't want to come here, don't I have to think about all of that, and that somehow we need to have a sentence that reflects that so that it stops? Yes, Your Honor, and we would submit that that statement should be interpreted as the district court focusing on the drug dealing that is going on. She does make a reference to drug dealers coming from Honduras, but ultimately, if you look at the whole context, the tenor and content, as this Court instructs in Barrero-Esasso, that district court must – that this Court must look at, it is clear that the focus is on deterring drug dealers. I mean, Barrero-Esasso also talks about the appearance. That's correct, Your Honor, and it is true that this Court should take into account any appearance. Why doesn't at least, you know, raise concerns about doesn't this give the appearance that she was taking his, you know, origin, national origin into account when she fixed a sentence at 48 months? If the district court had made multiple references, including ones tinged with animus the same way the district court in Barrero-Esasso did, then yes, I would submit that's the case. But here, the Court should look at the entire tenor and content of the sentencing hearings. There were two of them, and this is a single solitary reference over two hearings, and the district court never once even acknowledges the fact that the defendant is Honduran. Yes, there are discussions about Honduras, but it is clear that the actual basis for the Court's decision was not his Honduran ethnicity. It was deterrence of drug dealers, the pipeline of drug dealers that are in San Francisco. And, in fact, I would point out that not only did the defense counsel not object, but actually said, yes, I agree to this statement. So in context, it's clear that this is quite different from all the other cases cited by defense counsel. So it's just the fact that there's only this one remark, and really, she didn't really say that defendant had come from Honduras to deal drugs. I think that's right, Your Honor. Again, this Court said in Barrero-Esasso that the decision, the review of the sentence must be made based on our particular reading of the record before us. That's on 1355, as well as the tenor and content of the record as a whole. This is not like the other cases such as Leong, Caba, Bulltail, where not only did the district court reference the defendant's ethnicity or national origin, but it was completely untethered from the underlying offense. So, for example, in Estabbilio, the defendant was Hawaiian, but the case dealt with wire fraud. In Caba, the defendant was West African, but that is untethered with the underlying crime, which is drug dealing. And the Court there stated that it did not consider the defendant's background as an immigrant from Guinea, but rather the defendant's identification with the West African community. That is not what happened here. And so we think that, you know, one isolated remark does not make this plain error. Well, the other part of the transcript, though, before that, discussed the half-brother who returned to Honduras, correct? Yes, Your Honor. And so it's not in the context of the case, all of that led up to we have to deter these people from Honduras, correct? That's correct, Your Honor. The Court did mention the fact that the half-brother fled to Honduras, but again, if you look at it in context, the concern of the Court seems to be drug dealing and not so much the fact that this person is Honduran. Drug dealers could come from anywhere, and I think that was what the district court was trying to get at. She was just expressing frustration with the sale of Fentanyl. I think that's correct, Your Honor. In, let's just say she pointed out the tender line. Yes, Your Honor. And that's it. That's all that we should take from that. I think, yes, the frustration is about drug dealing. This is not in the record, but I think perhaps the district court was alluding to, based on her experience as a judge here in San Francisco, that a large proportion of drug dealers are from Honduras. But ultimately, the concern seems to be about drug dealing, not so much where the drug dealers come from. The Court is obviously concerned about children, business, et cetera, and it really doesn't make a difference to her decision where the drug dealers are coming from. So the government asked for 60 months, correct? That's correct, Your Honor, which is below guidelines. And the defendant requested 15? That's correct. And what was the ultimate sentence? The ultimate sentence was 48 months. And below guidelines? That was below guidelines, yes, Your Honor. The guidelines here were 70 to 87 months. So unless the Court has any more questions, I would submit and ask the Court to affirm the judgment. Thank you. Rebuttal. Thank you. I'd like to make three points, if I have enough time, which I might not. I'll start with the most important point, which is here the district court raised Mr. Carcamo's national origin unprovoked. And so that distinguishes this case from CABA, where the government had actually introduced facts into the record suggesting that the defendant's community in West Africa was very tight-knit and that news of this sentence would travel widely. There's nothing like that here, nothing suggesting a specific need for deterrence. Second, if this Court wants a case where there was only one reference as to the defendant's national origin, I think Estabilio is precisely on point. And I don't think the government is right to say that the offense there was completely unrelated from the defendant's national origin. The issue in Estabilio was that the defendant, a Native Hawaiian, had embezzled funds from a school for Native Hawaiian children. And the concern was that she had stolen from her own community. That's what the judge was getting at. And that was, again, just one reference to the fact that she was a Native Hawaiian who stole from other Native Hawaiians. So one reference, I think, can be enough to show that the actual basis for a sentence was at least in part the defendant's national origin. In terms of this idea that the district court was expressing a general frustration at drug dealing and the tenderloin, district courts absolutely can do that without reference to national origin. I think you said you had one more point, if you want to make that briefly.  My final point is that under Burgum, under Burgum, reversal can be appropriate when a district court mentions an improper factor at sentencing, even if it does so just once, as long as the reference is sufficiently clear in this Court's mind. Thank you. I have one question. Yes. You know, you agree that plain error review applies?  Yeah. I mean, we — I mean, the difficulty here is if defense counsel had objected at the time, my educated guess is the district court would have said, no, no, I'm not basing this on national origin. I'm just frustrated with this situation. But here, defense counsel said, yes, this is appropriate. Yes, this is appropriate. So how do you get over plain error review? Well, Your Honor, I think two responses to that. First, I think if we look at the record as a whole, there were multiple times where defense counsel, like any good litigator, started by highlighting where he agreed with the district court and then pivoted to an objection. Here, defense counsel began to respond and he was interrupted and then directed to a different topic by the court. Second, Lung — the Second Circuit in Lung got it right when they recognized that at sentencing, a defendant would understandably be reluctant to suggest that the district court is biased against him on account of his national origin. And because correcting these kinds of errors only requires a brief resentencing procedure, the cost of which is quite low, as the Supreme Court acknowledged in Rosales-Morales, courts should be more willing to entertain these kinds of issues even when there — when there was no clear objection below. Counsel did object to the idea of deterrence — of using Mr. Karkamode to deter other people generally. But to address the Court's other point, I think Trujillo-Castillon is actually — provides a powerful response. The Court there, the Seventh Circuit said, the government asks us to speculate about what the district court meant at the expense of the defendant, but we shouldn't have to and we won't. Clarifying the basis for a defendant's sentence requires only a brief resentencing procedure. We think that is a very small price to pay. In light of how constitutionally invidious this kind of error is, I would urge the Court to reverse and remand so Mr. Karkamode can be resentenced without reference to his national origin. Thank you. Thank you. We thank both counsel for their arguments, and the case is submitted.
judges: THOMAS, PAEZ, MILLER